## Francisco Reyons v. The State.

### *No. 2.　Decided May 17.*

1. **Death Penalty — Murder of the First Degree.** — Under our code, before the extreme penalty of the law will be permitted to be inflicted for homicide, it is required of the State to prove a murder of the first degree; that is, to show that the homicide was coolly and deliberately determined upon and consummated.

2. **Murder of Second Degree.** — When a homicide is the result of a sudden, rash, and immediate design, springing from an inconsiderate impulse, passion, or excitement, the crime is murder of the second degree.

3. **Homicide in the Protection of Another from Death or Serious Bodily Injury can not be Manslaughter.** — One may kill to protect another from death or serious bodily injury, real or apparent, and may be justified; but threatened injury to another would not in law be an adequate cause. If passion was provoked by such a cause, and the facts did not justify the homicide, the passion would be upon an inadequate cause, and a homicide committed under its influence would be murder in the second degree. Following Mealer v. The State. ante, page 102.

4. **Same.** — Where the sole defense was homicide in the protection of another, and it was indisputably shown by the evidence that at the moment of the fatal shot deceased had abandoned the difficulty, and was making no hostile demonstrations towards any one, and it was also apparent that neither defendant nor his friends were in any danger at the time from deceased: *Held,* the homicide could not be less than murder, and whether of the first or second degree depended on the existence or nonexistence of passion or excitement, and in such case the vital question is, what was the condition of defendant's mind at the time of the homicide?

5. **Degree of Murder.** — See facts stated which, in the opinion of the court, presented the sole question as to the degree of murder.

Appeal from the District Court of Travis. Tried below before Hon. James H. Robertson.

Appellant was indicted for the murder of one M. M. Hornsby, and at his trial was found guilty of murder in the first degree, and the penalty assessed at death. The facts are sufficiently stated in the opinion of the court.

*Hugh L. Davis* and *B. W. Allen,* for appellant, filed an able and elaborate brief, as did also *W. W. Williams,* for appellant.

*R. L. Henry,* Assistant Attorney-General, for the State.

SIMKINS, Judge.—Appellant was convicted of murder in the first degree, and his punishment assessed at death, from which judgment he appeals.

On the night of September 24, 1892, at a Mexican dance or fandango on the farm of M. M. Hornsby, in Travis County, the said Hornsby was

shot and killed by appellant. Appellant, with one Marcelena Lassano, attended the fandango. There was a large crowd of Mexicans present. Deceased was also in attendance to preserve order. At 1 o'clock, while the dance and music were going on, Lassano got into a difficulty with one Romero, and drawing a large knife, was pursuing him, when he was stopped by deceased and his son. He turned on deceased, and they then attempted to disarm him. While struggling with them he called for help, and cried, "Shoot them! Shoot them all!" Appellant, hearing the cry of Lassano, who was only a short distance from the platform, where one witness says appellant was then dancing, at once ran from the platform, drawing his pistol, and presenting it at deceased as he advanced on him. Deceased, being unarmed, turned from Lassano, who continued to struggle with Hornsby, and went to appellant, with his hands raised, saying in English, "Don't shoot. Put up your pistol." But appellant fired on him, and, his pistol failing to fire a second time, ran on Hornsby, and struck him on the head. The younger Hornsby at the same time released Lassano, and ran for his life, pursued by him.

The younger Hornsby testifies: "I caught Marcelena Lassano's hand that held the knife, to prevent father from being cut, and we struggled over the knife. I did not see the shooting. Heard the shot, but continued the struggle with Marcelena, when he turned the blade in my hand. I then turned him loose, and jumped away, and ran around the wagon, Marcelena pursuing me; and I saw father standing by a barrel of water, and a small Mexican struck father on top of the head with a pistol. He jumped up to strike him. I did not know defendant. I am certain my father did not know him. He was a stranger in the neighborhood. Father did not speak Mexican or Spanish." The record shows no pretense of prior ill will or malice on the part of appellant, who was a Mexican, and probably did not understand English. The court charged on murder in the first and second degrees and manslaughter.

We are unable to concur, after a careful examination of this record, in the verdict, that this was a premeditated homicide, executed in a calm and deliberate mind. It seems to be shown, that from the first cry for help to the firing of the fatal shot, hardly more than a minute elapsed, and undoubtedly there was excitement and anger exhibited by appellant. There is no question, that at common law, the facts of this case would have justified a verdict with the death penalty, because, whether appellant shot in a passion or in a sedate and deliberate mind, and whether he understood the words of deceased, addressed to him in English, he unquestionably saw that deceased was unarmed, and had abandoned the struggle with Lassano, as demonstrated by his turning to appellant with uplifted hands. But our code is more merciful to human temper. It has divided murder into two degrees. Before it inflicts the extreme penalty of the law, it requires the State to prove a murder of the first de-

gree; that is, to show that the homicide was coolly and deliberately determined upon or consummated. But where the homicide is the result of a sudden, rash, and immediate design, springing from an inconsiderate impulse, passion, or excitement, it becomes murder in the second degree. Farrer v. The State, 42 Texas, 271; McCoy v. The State, 25 Texas, 42 (bottom page).

In the case at bar the court substantially charged the jury, that if appellant knew that Lassano was violating the law by attacking another person with a deadly weapon, or was rudely displaying the same, and that deceased and his son interfered to prevent a breach of the peace or a crime, only using necessary force to disarm and quiet Lassano, and he interfered with malice aforethought and killed deceased, it would be murder upon express malice. This charge was unquestionably correct, for a homicide committed under such circumstances would have been utterly inexcusable. If it be shown that appellant saw the origin of the difficulty, and knew that Lassano was in no danger, but was only stopped and was disarmed because he was about to do an injury to others, the charge would be applicable. But suppose appellant's first intimation of the difficulty was hearing Lassano calling for assistance, and in the dim light by lantern saw him a short distance away, struggling in the grasp of two strangers, and believing he was in danger of serious bodily harm or death, he immediately ran to his rescue, drawing and presenting his pistol, and that one of the strangers abandoned the difficulty and started towards him, while the other continued the struggle, and appellant immediately killed the one confronting him, whose uplifted hands showed he had abandoned the difficulty, of what crime is he guilty? The court did not charge on this phase of the testimony. The only approximation to it was a charge to the effect, that if appellant's first intimation of the difficulty was seeing Lassano struggling with the two Hornsbys, and believing he was in danger of losing his life, or serious bodily injury, from said attack, and appellant's passion became so aroused as to render him incapable of cool reflection, appellant would be guilty of manslaughter. Such is not the law. Under such a condition of things, appellant would have been justified, and it was wholly immaterial whether passion existed or not. Bonner's case, 29 Texas Cr. App., 223; Willson's Crim. Stats., sec. 980; Varnell v. The State, 26 Texas Cr. App., 56.

Under the circumstances of this case, there could be no manslaughter. One may kill to protect another from death or serious bodily injury, real or apparent, and may be justified; but threatened injury to another, in a case like this, would not in law be an adequate cause. If passion was produced by such a cause, and the facts did not justify the homicide, the passion would be upon an inadequate cause, and the homicide would be murder in the second degree, when committed under its influence. Mealer's case, ante, p. 102. We are clearly of opinion, that there is neither

manslaughter nor justifiable homicide in the case, and the sole question is as to the degree of murder.

It is obvious that the charge of the court last referred to does not respond to the facts. Had appellant shot deceased when he and his son were struggling with Lassano, or had he shot the young Hornsby when struggling with Lassano, instead of the father, there would have been some relevancy in the charge. But it is indisputable that he shot the father when he was doing nothing to Lassano or appellant, and the law bound him to take notice that neither of them stood in any danger from deceased; and it could not be less than murder, and whether of the first or second degree depended on the existence or nonexistence of passion or excitement. The vital question then is, what was the condition of appellant's mind at the homicide? Was there time, considering all the circumstances in the case, for reflection or cooling time between deceased's abandonment of the difficulty with Lassano and the shot? The record shows strong excitement, rash and inconsiderate impulse. This is shown by the suddenness and bitterness of the attack. Coming up to deceased, without a moment's pause he began firing, and when the pistol failed to fire the second time he rushed upon his antagonist, so much his superior in height and size that he had to jump up to strike him in the head. The headlong rush of passion may have been beyond his control. West v. The State, 2 Texas Cr. App., 476; Hobb's case, 16 Texas Cr. App., 523; Howard's case, 23 Texas Cr. App., 280; Hawthorne's case, 28 Texas Cr. App., 214.

It would be a singular case in which a homicide justifiable at one moment would become murder upon express malice the next. We think this is a case that required a careful application of the law to the facts. A man of great popularity, while trying to keep the peace on his own farm, is willfully slain by one who is of humble condition, unknown, and of a different race. It is certainly obligatory upon the trial court in such a case to carefully apply the law to the facts, to the end that true justice may be meted out to every one alike.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.